IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1024

Filed 1 July 2026

Pasquotank County, Nos. 24JT001027-690, 24JT001028-690, 24JT001029-690

In re:

D.A.S.,

E.D.S.,

U.J.R.S.

Appeal by respondent-mother from orders entered 29 July 2025 by Judge Meader W. Harriss, III, in Pasquotank County District Court. Heard in the Court of Appeals 2 June 2026.

> *Frank P. Hiner, IV, for petitioner-appellee Pasquotank County Department of Social Services.*

> *Administrative Office of the Courts, by NC GAL Appellate Counsel Matthew D. Wunsche, for appellee guardian ad litem.*

> *Jason Senges for respondent-appellant mother.*

ZACHARY, Judge.

Respondent-Mother appeals from (1) the trial court's order adjudicating her minor children "Dahlia," "Emmett," and "Uma"[1] neglected; and (2) its disposition

---

[1] We adopt the pseudonyms to which the parties stipulated in order to protect the identities of the juveniles. *See* N.C.R. App. P. 42(b).

order terminating Respondent-Mother's parental rights to the children.[2] On appeal, Respondent-Mother argues that the court lacked subject-matter jurisdiction to hear the case. After careful review, we affirm.

## I.     Procedural Background

On 26 October 2022, Petitioner Pasquotank County Department of Social Services ("DSS") filed petitions alleging that Dahlia, Emmett, and Uma were "neglected juveniles" pursuant to N.C. Gen. Stat. § 7B-101(15). After a hearing, the trial court entered an order on 7 February 2023 adjudicating the children neglected and awarding custody to DSS.

In October 2024, DSS filed petitions to terminate Respondent-Mother's parental rights to Dahlia, Emmett, and Uma. DSS alleged the following grounds for termination: 1) neglect, *id*. § 7B-1111(a)(1); 2) that Respondent-Mother had willfully left the children in foster care or replacement outside the home for more than 12 months without showing reasonable progress toward correcting the conditions that led to their removal, *id*. § 7B-1111(a)(2); and 3) Respondent-Mother's willful failure to pay a reasonable portion of the cost of the children's care, *id*. § 7B-1111(a)(3).

On 6 November 2024, the termination petitions came on for hearing in Pasquotank County District Court. On 10 December 2024, the trial court entered a preliminary order directing, *inter alia*, DSS to serve Dahlia's putative father by

---

[2] In the disposition order, the court also terminated the parental rights of the children's putative and biological fathers. The fathers are not parties to this appeal.

publication in accordance with N.C. R. Civ. P. 4(j1).

Following a continuance, the matter came on for hearing on 8 April 2025. On 29 July 2025, the trial court entered adjudication and disposition orders. The court adjudicated the minor children neglected and concluded that grounds existed to terminate Respondent-Mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)–(3). In its disposition order, the trial court determined that "it [wa]s in the best interests of the minor children that the parental rights of . . . Respondent-Mother be terminated" and terminated Respondent-Mother's parental rights.

Respondent-Mother filed timely notice of appeal from the orders.

## II.    Discussion

Respondent-Mother contends that DSS "failed to comply" with N.C. Gen. Stat. § 7B-1104(5) when it "did not attach a copy of a custody order proving [it] had standing to file the petitions" and, therefore, the trial court lacked subject-matter jurisdiction to terminate Respondent-Mother's parental rights. We disagree.

Subject-matter jurisdiction is "the power of the court to deal with the kind of action in question." *In re N.T.U.*, 234 N.C. App. 722, 724, 760 S.E.2d 49, 52 (citation omitted), *disc. review denied*, 367 N.C. 826, 763 S.E.2d 517 (2014). "Absent subject-matter jurisdiction, a trial court cannot enter a legally valid order infringing upon a parent's constitutional right to the care, custody, and control of his or her child." *In re A.L.L.*, 376 N.C. 99, 101, 852 S.E.2d 1, 3–4 (2020). "When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void,

i.e., as if it had never happened. Thus the trial court's subject-matter jurisdiction may be challenged at any stage of the proceedings, even for the first time on appeal." *In re J.H.*, 244 N.C. App. 255, 259, 780 S.E.2d 228, 233 (2015) (extraneity removed).

Whether "a trial court possesses subject-matter jurisdiction is a question of law that is reviewed de novo." *A.L.L.*, 376 N.C. at 101, 852 S.E.2d at 4. When conducting de novo review, "this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re T.N.G.*, 244 N.C. App. 398, 402, 781 S.E.2d 93, 97 (2015) (extraneity removed).

Unchallenged findings of fact are binding on appeal. *N.T.U.*, 234 N.C. App. at 733, 760 S.E.2d at 57. "[T]he burden is on the party asserting want of jurisdiction to show such want." *In re N.T.*, 368 N.C. 705, 707, 782 S.E.2d 502, 504 (2016) (extraneity removed).

"A trial court's subject-matter jurisdiction over a petition to terminate parental rights is conferred by [N.C. Gen. Stat.] § 7B-1101" of our Juvenile Code. *A.L.L.*, 376 N.C. at 104, 852 S.E.2d at 6. This section provides that "[t]he court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who . . . is in the legal or actual custody of a county department of social services . . . at the time" the petition or motion is filed. N.C. Gen. Stat. § 7B-1101. However, before a court with general jurisdiction may exercise jurisdiction, "there must be some appropriate application invoking the judicial power of the court with respect to the matter in question." *In re*

*T.B., J.B., C.B.*, 177 N.C. App. 790, 791, 629 S.E.2d 895, 897 (2006) (citation omitted).

In order to invoke the judicial power of a court, the petitioner must have standing. Standing to file a petition to terminate parental rights is addressed in N.C. Gen. Stat. § 7B-1103. This section provides, in relevant part, that "[a]ny county department of social services, consolidated county human services agency, or licensed child-placing agency to whom custody of the juvenile has been given by a court of competent jurisdiction" may file a petition to terminate parental rights. N.C. Gen. Stat. § 7B-1103(a)(3). To evidence proper standing, the termination petition must provide, *inter alia*, "[t]he name and address of any person or agency to whom custody of the juvenile has been given by a court of this or any other state"; in support of this statement, "a copy of the custody order shall be attached to the petition or motion." *Id.* § 7B-1104(5).

Accordingly, "where DSS files a motion for termination of parental rights, the trial court has subject[-]matter jurisdiction only if the record includes a copy of an order, in effect when the petition is filed, that awards DSS custody of the child" or where DSS's failure to attach the custody order is remediated "by amendment of the petition or later production of the order." *T.B.*, 177 N.C. App. at 793, 629 S.E.2d at 898.

In the instant case, the children were in DSS custody at the time of the filing of the petitions. Thus, the dispositive issue is whether DSS's attachment to the petitions of the 15 May 2024 permanency planning order was sufficient to give DSS

- 5 -

standing to petition the court to terminate Respondent-Mother's parental rights and vest the court with subject-matter jurisdiction to do so.

Respondent-Mother contends, without citation to authority, that the 15 May 2024 permanency planning order does not constitute "a proper custody order" and therefore, DSS did not have standing to file the termination petition. Yet there is no dispute that, in the decretal portion of this order, the court expressly ordered that "[l]egal custody of [Dahlia, Emmett, and Uma] shall remain with" DSS. Indeed, the court could have instead modified its award of custody from DSS to another. Thus, we conclude that the 15 May 2024 permanency planning order is a custody order for purposes of standing to file a petition to terminate parental rights.

DSS filed the termination petitions in October 2024. At that time, the custody order in effect was the 15 May 2024 permanency planning order in which the court maintained custody of the children with DSS. Accordingly, DSS had standing to file the termination petitions, and the court had jurisdiction to terminate Respondent-Mother's parental rights.

**III. Conclusion**

For the foregoing reasons, we affirm the trial court's adjudication and disposition orders.

AFFIRMED.

Chief Judge DILLON and Judge HAMPSON concur.